UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIUS DANIEL ALEXANDER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1201** |
| **CLINTON GIVENS** | **SECTION "N"(3)** |

### REPORT AND RECOMMENDATION

Plaintiff, Julius Daniel Alexander, a state pretrial detainee, filed this civil action pursuant to 42 U.S.C. § 1983 against Clinton Givens, a homicide detective with the New Orleans Police Department. In this lawsuit, plaintiff contends that information about his criminal case was improperly released to the media by the defendant.

### I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[1] Regarding such lawsuits, federal law further requires:

---

[1] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

>On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
>>(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

>Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
>>(i) is frivolous or malicious;
>>(ii) fails to state a claim on which relief may be granted; or
>>(iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

2

allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[2] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claim

In this lawsuit, plaintiff claims that the defendant improperly released information to the press, including the fact that plaintiff was arrested at his mother's address.[3]

Based on his complaint and the administrative grievance attached thereto, it appears that plaintiff's primary contention is that his *mother* may suffer harm from the disclosure of her address and the allegation that plaintiff was arrested there. If that is indeed the gist of plaintiff's claim, he has no standing to bring that claim. Plaintiff's mother herself would be the proper party to bring a

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[3] Plaintiff's claim is apparently based on the attached article from www.nola.com or a similar article published after he was arrested for a double shooting.

claim that she has been injured by a state actor. Plaintiff is not an attorney, and as such, he cannot represent his mother's interests. See 28 U.S.C. § 1654; see also Hui Yu v. U.S. Department of Homeland Security, 568 F. Supp. 2d 231, 234 (D. Conn. 2008).

If, however, plaintiff is instead arguing that *he* has been wronged in some manner by the release of the information concerning his arrest, he still has not stated an actionable claim. "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994).

In this case, plaintiff has been deprived of no federal right. At best, plaintiff's contention is that his reputation has somehow been harmed by the stories in the media. However, the United States Fifth Circuit Court of Appeals has noted, mere "[a]llegations of damage to one's reputation ... fail to state a claim of a denial of a constitutional right." State of Texas v. Thompson, 70 F.3d 390, 392 (5th Cir. 1995); accord Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) ("[I]njury to reputation alone does not give rise to section 1983 liability."). Neither slander nor defamation is a constitutional tort cognizable in an action brought pursuant to 42 U.S.C.§ 1983. Mowbray v. Cameron County, Texas, 274 F.3d 269, 277 (5th Cir. 2001); Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir. 1999), abrogated in part on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003); Davis v. Myers, Civ. Action No. 08-4492, 2008 WL 4747424, at *2 (E.D. La. Oct. 17, 2008).

Of course, it is true that the United States Fifth Circuit Court of Appeals has recognized what are commonly called "stigma-*plus*-infringement" claims against state actors, explaining:

> [D]amage to an individual's reputation as a result of defamatory statements made by a state actor, *accompanied by an infringement of some other interest*, is actionable under § 1983. We have described this as a "stigma-plus-infringement" test. To meet the stigma prong, a plaintiff must show that the *stigma* was caused by concrete, *false* factual assertions by a state actor. To establish the infringement prong, a plaintiff must show that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights.

Thompson, 70 F.3d at 392 (emphasis added). Even if the instant complaint is construed as asserting a "stigma-plus-infringement" claim, that claim fails for the following reasons.

First, plaintiff clearly cannot make the required showing on the "stigma" prong of the analysis because he has not identified a statement that is both false and stigmatizing. As noted, his claim is based on the fact that the defendant is alleged to have revealed to the media that plaintiff was arrested at his mother's house. To the extent that plaintiff is concerned by the revelation of the mere fact of his *arrest*, that revelation was not *false*. He *was* arrested. See, e.g., Odomes v. Weber, Civ. Action No. 12-2020, 2012 WL 5183562, at *3 n.3 (E.D. La. Oct. 1, 2012), adopted, 2012 WL 5046615 (E.D. La. Oct. 18, 2012). To the extent that he is concerned by the revelation that the arrest occurred *at his mother's house*, a fact which he disputes, that revelation, even if untrue, in no way *stigmatized* him. Wells v. Hico Independent School District, 736 F.2d 243, 256 n.16 (5th Cir. 1984) ("[F]or a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like." (quotation marks omitted)). The location of his apprehension was of no consequence.

Second, in any event, plaintiff also cannot make the showing required on the "infringement prong" of the analysis. Even if he could point to a statement that was both false and stigmatizing, he has not alleged that the purported defamation was accompanied by a colorable violation of a

5

"more tangible" interest as necessary to assert a "stigma-plus-infringement" claim.  See Geter v. Fortenberry, 849 F.2d 1550, 1556-57 (5th Cir. 1988).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[4]

New Orleans, Louisiana, this thirtieth day of April, 2015.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]  Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

(http://www.nola.com/)

# Gentilly man arrested in Labor Day slaying, police say



Julius Alexander, 26, was booked with first-degree murder and attempted first-degree murder in connection with an Aug. 30 double-shooting that left a woman injured and Eugene Breashears dead, New Orleans police said. *(Photo courtesy of Orleans Parish Sheriff's Office)*

 (http://connect.nola.com/staff/KenDaley/index.html) By **Ken Daley, NOLA.com | The Times-Picayune (http://connect.nola.com/staff/KenDaley/posts.html)**
**Email the author** | **Follow on Twitter (http://twitter.com/Ken_Daley)**
on January 20, 2015 at 2:02 PM, updated January 20, 2015 at 3:09 PM

**New Orleans police (http://topics.nola.com/tag/NOPD /index.html)** have arrested a Gentilly man they say is responsible for a double shooting in the 7th Ward that left a man dead and a woman injured over Labor Day weekend.

Julius Alexander, 26, is accused of **shooting a couple in their car (http://www.nola.com/crime/index.ssf/2014/08/nopd_investigating_double_shoo_5.html)** on the night of Aug. 30 after they picked him up from his mother's house in **Gentilly (http://topics.nola.com/tag/gentilly/index.html)**. Police said the shooting left 27-year-old Eugene Breashears dead and a 24-year-old woman injured. The woman, though shot in the arm and leg, managed to escape and drive herself to the hospital before helping police identify the gunman over the course of the next five months, starting with his nickname "Ju-Ju."

According to Alexander's arrest warrant, the woman said she let Breashears drive her car Aug. 30 around 10 p.m. to pick up his friend that she knew only as Ju-Ju. She was not certain of the address, but described the exterior of the house in detail, the report said. When the man she knew as Ju-Ju came out, the woman said she moved to the car's back seat.

She told police Ju-Ju directed Breashears on a short drive of less than five minutes, directing him to stop in the 1800 block of Treasure Street, between Broad Street and the London Canal. She said Ju-Ju got out of the car and asked to borrow Breashears' phone. Moments later, Ju-Ju began shooting at them, she told police.

The woman said Breashears was shot and fell out of the car onto Treasure Street. She said she climbed from the back seat to get behind the wheel and drive away, as more shots rang out. She was struck at least twice but managed to reach a hospital for treatment, according to the report.

Emergency responders found Breashears unresponsive in the middle of Treasure Street, the report said, and he was transported to Interim LSU Hospital where he was pronounced dead shortly after. Friends said Breashears recently had graduated with a biology degree from Southern University and was pursuing a master's degree in hopes of working as an OB/GYN.

The report said the woman was able to provide detectives with Ju-Ju's name and physical description, as well as the name of the suspect's brother.

NOPD Homicide Detective Clinton Givens met with the woman in December and worked to piece together a perimeter likely to contain the house where Ju-Ju had been picked up that night, according to the warrant. The radius did not contain any known address associated with Alexander, but did give a return on his mother's house on Republic Street, about four minutes' drive from the shooting scene.

The report said the house matched the woman's description, and later was identified by her. The report said homeowner Troylynn Alexander told the detective that her son Julius Alexander did not live there but visited occasionally. The survivor of the shooting

later picked Julian "Ju-Ju" Alexander's photo out of a lineup, identifying him as the gunman, according to the warrant.

Alexander was booked Jan. 15 with first-degree murder and attempted first-degree murder, and was ordered held without bond pending his next hearing on Thursday. Court records show Alexander has previous convictions for drug and weapons possession in Orleans Parish.



   

New Orleans Police investigate a double shooting on Treasure Street at North Broad which left a woman injured and a man dead on Saturday, August 30, 2014. (Michael DeMocker, Nola.com / The Times-Picayune)